Weaver, J.
(dissenting). I dissent from the majority’s reversal of the Court of Appeals’ affirmance of the termination of respondent’s parental rights. As Justice MARKMAN correctly and clearly states:
I respectfully dissent from this Court’s opinion reversing the Court of Appeals’ affirmance of the order terminating respondent-father’s parental rights to his two- and four-year-old sons. I simply cannot support the majority’s conclusion that the trial court clearly erred by terminating respondent’s parental rights. In addition, given that respondent received all the process to which he was entitled under the law, I find no “due process” violation in the fact *181 that the majority is able to identify ways in which he could have been given still more process. The majority, quoting the children’s lawyer-guardian ad litem, asserts that respondent was “ ‘hamstrung from the beginning [in] trying to get things in order so that he [could] one day be a father to these children.’ ” However, the majority disregards two quite significant points. First, to the extent that respondent was “hamstrung,” this was of his own making— nobody but respondent can be blamed for the fact that he was in prison during the pendency of these proceedings. Second, there is no evidence that respondent did anything to provide for his children while they were living with their unfit mother, with foster parents, or with their paternal aunt and uncle.[1] Instead, respondent pleaded ‘no contest’ to the removal petition that alleged that “Mr. Mason has failed to provide for the children physically, emotionally and financially.” Indeed, although respondent knew that the children’s mother was drinking again even before the court did, he still did nothing to try to protect his children from the precarious situation in which this placed his children. In addition, when he knew that his children were being removed from their mother, he did nothing to prevent them from being placed in foster care even though he had relatives who were willing and able to care for the children.
Despite respondent’s repeated failures in these regards, the majority reverses the judgment of the Court of Appeals, which affirmed the trial court’s termination of his parental rights, on the basis that the Department of Human Services (DHS) and the trial court did not do enough to help respondent become a better parent. I believe that the majority has it exactly backwards — respondent is the one who did not do enough to become a better parent. He did virtually nothing to demonstrate that he was willing or able to take responsibility for the care and custody of these children. It is potentially catastrophic for these children that their interest in a safe, secure, and stable home must again be placed in abeyance while respondent is afforded yet another opportunity to become a minimally acceptable parent.[2]
*182 The clear error in this case is not the Court of Appeals’ unanimous decision affirming the termination of the imprisoned father’s parental rights or the trial court’s decision to do so. The clear error is the Supreme Court majority’s unrestrained reaching out and the creation of an issue that was not raised in the trial court or the Court of Appeals and that takes 26 pages to find clear error by the tried court where there is none, with the tragic result for these two little boys, two and four years old, who will be deprived of the only parents they *183 have ever known and the security of a stable and loving home that they so need and deserve. Indeed, the majority’s decision and opinion clearly and tragically have this case “backwards.”

 In response to the majority’s assertion that respondent “supported” his family before he was imprisoned, I must note that respondent testified that, before he was imprisoned, he and his “family” lived in his mother’s house, his girlfriend’s grandmother’s house, and a house owned by his brother. In light of this testimony, it is not entirely clear who supported respondent and his “family” — respondent or respondent’s mother, his girlfriend’s grandmother, and his brother. Respondent also has a third child (who was not the subject of the termination proceedings at issue here), and there is no evidence in the record to suggest that respondent has done anything to provide for this child either, before or after his imprisonment. Although respondent did at one point write letters to one child while he was in prison, he admitted that he stopped doing even that. To say the least, I do not believe that the trial court clearly erred in its conclusion that the fact that respondent allegedly “arranged for work and housing in anticipation of his parole” was too little, too late.

 The majority contends that “there is no reason that the children’s lives must be disrupted during the proceedings on remand.” Unlike the majority, I believe that not knowing where they may be living tomorrow (maybe with their father, maybe with their aunt and uncle, or maybe with new foster parents) very much constitutes a “disruption” in young children’s lives.